## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| **In re BLOW WIND SHIPPING, S.A.** | ) |
| **and LEMISSOLER** | ) Misc. No. 10-mc-114-P-JHR |
| **SHIPMANAGEMENT, LTD.** | ) |
| | ) |
| | ) |

### GOVERNMENT'S OBJECTION TO VERIFIED EMERGENCY PETITION FOR AN ORDER AUTHORIZING DEPOSITION TO PERPETUATE THE TESTIMONY OF VADYM FOKIN PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 27

Now comes the United States of America, by and through its attorneys, Paula D. Silsby, United States Attorney for the District of Maine, F. Todd Lowell, Supervisory Assistant United States Attorney, and Todd S. Mikolop, Trial Attorney, Environment and Natural Resources Division, Environmental Crimes Section, and submits this response in opposition to the pending *Verified Emergency Petition For an Order Authorizing Deposition to Perpetuate the Testimony of Vadym Fokin Pursuant to Federal Rule of Civil Procedure 27* (Docket No. 1).

### FACTUAL BACKGROUND

1.      This case concerns the *M/V Margit Gorthon* ("*Margit Gorthon*"), a Cyprus-flagged cargo vessel owned by Blow Wind Shipping, S.A. and operated by Lemissoler Shipmanagement, Ltd.  Both companies are headquartered in Limassol, Cyprus.  Vadym Fokin, who is the subject of this pleading, was a crew member on the *Margit Gorthon* when it arrived in Eastport, Maine, on February 2, 2010.  The vessel was boarded and inspected by the United States Coast Guard ("U.S. Coast Guard"), an agency of the United States Department of Homeland Security, pursuant to the U.S. Coast Guard's authority under 14 U.S.C. Section 89(a) to board ships and conduct regular inspections and investigations of potential violations.

2.      The United States is part of an international regime governing vessel operation

and safety, embodied in numerous agreements, ratified by the United States, that depends on the

principle of reciprocity.  Flag states certify a ship's compliance with international standards, and

port states, such as the United States, conduct inspections to assure compliance in their ports and

waters.  In conducting Port State Control inspections, the United States Coast Guard looks at,

among other things, compliance with the International Convention for the Safety of Life at Sea

(SOLAS), the International Convention for the Prevention of Pollution of Pollution from Ships,

1973, as modified by the Protocol of 1978 relating thereto (otherwise known as "MARPOL

73/78" or "MARPOL"), and the International Management Code for the Safe Operation of Ships

and for Pollution Prevention (ISM Code).  Failure to comply with domestic or international

standards can form the basis of an order to refuse to allow a ship to enter port, to prohibit the

ship from leaving port without remedial action, or to refer the matter to the flag state.  In

conducting these agency proceedings, United States Coast Guard personnel rely upon the

statements of the ship's crew and documents, including the vessel's Oil Record Book.

     3.     The Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901-1912 is

the United States domestic implementation of MARPOL.  APPS and the regulations

promulgated pursuant thereto at 33 C.F.R. Part 151 et. seq., require each oil tanker of 150 gross

tons or more or non-tanker vessel of more than 400 gross tons to maintain a record known as an

Oil Record Book.  33 C.F.R. § 151.25.(a).  Entries must be made in the Oil Record Book for

certain engine room operations, including the disposal of oil residue or the discharge overboard

or disposal otherwise of bilge water that has accumulated in machinery spaces.  33 C.F.R. §

151.25(d).  All accidental, emergency or other exceptional discharges of bilge waste or oil must

be recorded in the Oil Record Book along with the reason for the discharge.  33 C.F.R. §

2

151.25(g).  Each of these engine room operations, including the overboard discharge of bilge waste, is required to be fully recorded without delay in the Oil Record Book.  33 C.F.R. § 151.25(h).  The entries are to be signed by the person or persons in charge of the operation and each completed page must be signed by the master of the vessel.  33 C.F.R. § 151.25(h).  These regulations apply to foreign-flagged vessels when they are in the navigable waters of the United States, or while at a port or terminal under the jurisdiction of the United States.  33 C.F.R. § 151.09.  *See also United States v. Jho, 534 F.3d 398, 403 (5th Cir. 2008); United States v. Ionia Management, S.A., 07-5801-cr, 08-1387-cr (2nd Cir. 2009)*.  It is widely known within the maritime industry that the U.S. Coast Guard regularly inspects the Oil Record Book during port state control inspections to determine compliance with U.S. law and MARPOL and to assure that ships are not an environmental threat to U.S. ports and waters.

4.      During its inspection on or about February 4, 2010, U.S. Coast Guard officials discovered compelling evidence that the vessel was engaged in a practice of illegally dumping waste oil directly overboard into the ocean without the use of, or through the improper alteration or use of, required pollution prevention equipment, and that the Oil Record Book maintained on board the vessel was materially false and fraudulent.

5.      Based on the suspected serious violations of maritime and United States criminal law discovered during the U.S. Coast Guard's boarding and inspection, on February 8, 2010, U.S. Coast Guard Captain J.B. McPherson, Officer in Charge, Marine Inspection for Coast Guard Sector Northern New England, notified the master via letter of the *Margit Gorthon* that he was exercising his authority under 33 U.S.C. § 1908(e) to request the withholding of the vessel's United States Customs and Border Protection departure clearance until the vessel provided

3

surety satisfactory as authorized in 33 U.S.C. § 1908(e).  Blow Wind Shipping, S.A. (owner of

the vessel) and Lemissoler Shipmanagement, Ltd. (operator of the vessel) entered into an

"Agreement on Security," (the "Surety Agreement") with the United States, through the U.S.

Coast Guard Captain of the Port.  In the agreement, Blow Wind Shipping, S.A. and Lemissoler

Shipmanagement, Ltd. represented that they "desire[d] to arrange for security to be posted to

secure the performance of this Agreement and to permit U.S. Customs and Border Protection to

[lift] the hold on the Vessel's customs clearance."  Exhibit D to Docket No. 1 at 2.  Pursuant to

the Surety Agreement, Blow Wind Shipping, S.A. and Lemissoler Shipmanagement, Ltd.

arranged to deposit $500,000 United States dollars in an escrow account.  *Id.*  In the Surety

Agreement, Blow Wind Shipping, S.A. and Lemissoler Shipmanagement, Ltd. agreed to

facilitate the presence and appearance of certain specified necessary crewmember witnesses.  *Id.*

at 4-5.  Blow Wind Shipping, S.A. and Lemissoler Shipmanagement, Ltd. agreed to continue the

crewmember witnesses' employment, including paying their normal wages, keeping them in the

District of Maine, and providing for their lodging and meals, "for the lesser of a period of 180

days or until such time as the Assistant United States Attorney/Department of Justice

Environmental Crimes Section attorney ... advises that their testimony and continued presence in

the District of Maine is no longer needed."  *Id.* at 5-6.  Blow Wind Shipping, S.A. and

Lemissoler Shipmanagement, Ltd. agreed to repatriate or transport the witnesses to their home

countries or to port to complete their contracts, at Blow Wind Shipping, S.A. and Lemissoler

Shipmanagement, Ltd. expense.  *Id.* at 5.

     6.     Subpoenas related to the criminal investigation have been issued to Blow Wind

Shipping, S.A. and Lemissoler Shipmanagement, Ltd., on February 24, 2010.  Counsel for each

accepted service of the subpoenas and continues to make productions of documents and other items.

7.      On April 7, 2010, the government notified counsel for the owner and operator, pursuant to the Security Agreement, that Mr. Fokin's continued presence in the District of Maine is no longer needed by the United States.

## ARGUMENT

Petitioners seek to perpetuate the testimony of Mr. Fokin through the use of Federal Rule of Civil Procedure 27 and further seek an order by this court requiring the government to turn over certain materials relevant to Mr. Fokin and the investigation.  Both requests should be denied because they violate criminal discovery rules.

### A.      Civil Discovery in a Criminal Matter

Petitioners request an order to depose Mr. Fokin "to preserve his testimony for use in future civil, administrative or criminal proceedings."  Docket No. 1 at 1. They further request an order that the government "turnover [*sic*] all memoranda, agent notes of interviews, as well as all other materials relative to the overall investigation and Mr. Vadym Fokin that is currently in the government's possession.  This request includes disclosure of all exculpatory or impeaching material in the government's possession, custody, or control ..."  *Id.* at 9.  The Federal Rules of Civil Procedure and applicable caselaw weigh against granting such a motion.

There is a pending criminal investigation in the District of Maine relating to conduct onboard the *Margit Gorthon*.  The case was referred for criminal prosecution by the United States Coast Guard to the United States Attorney and the Environmental Crimes Section of the Department of Justice.  This criminal investigation is the only pending proceeding of any kind.

Petitioners argue that a deposition is appropriate because they may face civil, administrative, or criminal fines.  Docket No. 1 at page 6.  This assertion must be considered in context with the remainder of the agreement.  The third paragraph of the first page of the agreement asserts the alleged violations that caused the negotiation of that agreement and ultimately lead to the release of the hold on the vessel:

> C.     The United States of America ("United States") asserts that the Vessel is subject to the MARPOL Protocol and 33 U.S. Code Chapter 33; that the vessel violated MARPOL 73/78, 33 U.S.C. 1901 et. seq., specifically 33 U.S.C. 1908(a); 33 CFR Part 151, Subpart A, specifically 33 CFR 151.25, (a) and (h); and 33 U.S.C. 1319(c)(2) ("Alleged Violations"); and that a District Court may assess criminal penalties against the Vessel *in rem* or its Owner or Operator *in personam*.

Exhibit D to Docket No. 1 at page 2.  Each of the statutes cited are criminal provisions; none are civil or administrative.  Petitioners were on notice from the negotiating and signing of this agreement that the investigation was criminal in nature.  The only initiated investigation is the federal criminal investigation in connection with which the Petitioners have received, and responded to, subpoenas.

As the only existing investigation is a criminal investigation, use of the Civil Rules is improper and circumvents the federal rules and statutes that govern discovery in criminal cases.  There is a clear distinction between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.  The Federal Rules of Civil Procedure "govern the procedure in all *civil* actions and proceedings in the United States district courts ..."  Fed.R.Civ.P. 1 (emphasis added).  Rule 27 allows a person who wants to perpetuate testimony in a civil case to file a verified petition in the district court for the district where any expected adverse party resides.  *See* Fed.R.Civ.P. 27 (a)(1).  Similarly, the Federal Rules of Criminal Procedure "govern the

procedure in all *criminal* proceedings in the United States district courts ..."  Fed.R.Crim.P. 1 (emphasis added).  The criminal rules provide a mechanism to preserve testimony under specific circumstances.  *See* Fed.R.Crim.P. 15 (a)(1) and (2).   If certain conditions are met, Rule 15 allows a party to move that a prospective witness be deposed in order to preserve testimony for trial.  *Id*.

By filing their petition, Petitioners attempt to substitute an inapplicable rule of civil procedure because they lack standing under the applicable federal criminal rule.[1]  Criminal Rule 15 allows a *party* to move to depose a witness in order to preserve testimony.  *See U.S. v. Adawallah*, 349 F.3d 42 (2nd Cir. 2003) ("The prosecutor and the witness may broadly be deemed parties, however, in the sense that each has interests to advance or protect before the grand jury.").  *Id.* at 60.  Neither Blow Wind Shipping, S.A. nor Lemissoler Shipmanagement, Ltd. is a party to the ongoing criminal investigation and therefore cannot avail themselves of Rule 15; nor can they properly avail themselves of Civil Rule 27 because no civil or administrative proceeding exists.  Thus, there is no legal avenue for the Petitioners to claim the legal relief they are seeking in the circumstances of this case.

In *In the Matter of Hawkins*, 1973 WL 561 (D.Me.), Judge Gignoux considered an application by Alvin and Alice Hawkins to perpetuate the testimony of a witness and to examine and copy all relevant records in the witness's possession.  The Internal Revenue Service was considering both civil and criminal proceedings against both petitioners for alleged income tax

---

[1] George Chalos, counsel for Blow Wind Shipping, S.A. and Lemissoler Shipmanagement, Ltd., advised the court during the scheduling conference on April 12, 2010, that their preference would have been to move for a deposition under Federal Rule of Criminal Procedure 15 but that that Rule was unavailable to them.

deficiencies but "no criminal or civil action ha[d] yet been insituted [*sic*] by the government." *Id.* at 1.  The government argued in opposition that the petition represented an effort to use the civil discovery procedures as a device to obtain evidence to which the petitioners would not be entitled under the criminal discovery rules.  The court granted the petition because "there [was] no pending criminal prosecution.  Indeed, there [was] no pending civil proceeding."  *Id*. at 2.

The *Hawkins* case is distinguishable from the instant case because here there *is* an active criminal grand jury investigation and no civil proceeding has been contemplated, much less initiated.  More on point are *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962) and *In re Application of Eisenberg*, 654 F.2d 1107 (5th Cir. 1981).  In *Campbell*, the plaintiffs in a civil action for a tax refund moved to require the District Director of Internal Revenue to produce reports of agents who had investigated the plaintiffs for tax fraud.  The reports were in the United States Attorney's criminal files but no assessment for deficiencies had been made.  The trial judge held that the civil action was independent of any criminal action and therefore granted the taxpayer's motion.  The Fifth Circuit reversed because the plaintiffs were on notice prior to their filing the civil action that their file had been forwarded to the United States Attorney for criminal prosecution.  The court held that "a litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit". *Id.* at 487.

As in *Campbell*, in the present case there are not "some vague suspicions that might in the future lead to a criminal charge."  *Id*. at 488.  This is a case referred by the U.S. Coast Guard to the Department of Justice for criminal prosecution, and one that has been submitted to the

8

grand jury.  The existence of a criminal investigation is no news to the Petitioners; the Security

Agreement and the subpoenas put them on notice.

In *Eisenberg*, the petitioner moved pursuant to Rule 27 of the Federal Rules of Civil

Procedure seeking leave to depose an agent of Scotland Yard in anticipation of litigation.  The

district court granted the motion over the government's objection.  The United States sought

relief from the deposition order and identified Eisenberg as the target of a federal grand jury

investigation.  This was not news to Eisenberg, as he had been subpoenaed to the grand jury in

connection with an investigation four months earlier (and several months after the filing of his

civil discovery petitition).  *In re Application of Eisenberg*, 654 F.2d at 1110.  The district court

granted the government's motion and vacated and set aside the order granting the amended

petition for deposition.  In accordance with *Campbell,* the court declared that Eisenberg's need

for the deponent's information in the preparation of his civil case must be subordinated to the

pending grand jury's interest in secrecy, and the court found that the information was actually

sought by Eisenberg for use in the criminal proceeding that was foreshadowed by the grand jury

inquiry.  *Eisenberg* at 1111.  The Fifth Circuit affirmed the district court's judgment, agreeing

"that Eisenberg's civil discovery request was a disguised attempt at criminal discovery" because

a civil case had not yet been filed and he knew of the grand jury investigation.  *Id*. at 1113.  The

court concluded, "even if Eisenberg possessed the purest of motives, he would have been the

beneficiary of materials otherwise unavailable to him under the criminal rules if the motion were

granted, thus nullifying in effect the criminal discovery limitations."  *Id*.

Together, *Campbell* and *Eisenberg* stand for the proposition that a target of a criminal

investigation who is not the subject of a civil or administrative matter, is entitled to neither a

9

civil deposition or civil documentary discovery.  Granting the pending petition would avail Petitioners of civil discovery process that is not properly available during a criminal investigation.  The *Eisenberg* court's discussion of the rules that limit depositions in the criminal context is instructive: "[T]here is no rule in criminal procedure analogous to Rule 27 by which a deposition can be taken by a potential defendant prior to the initiation of a prosecution."  *Id*. at 1113, n. 9.  Once the prosecution is pending, "[d]epositions of a party's own witness are allowed . . . only when preservation of the testimony is in the interest of justice due to exceptional circumstances. Fed.R.Crim.P 15(a) (1975).  In criminal cases, depositions are not intended as discovery devices.  They are in limited favor where a party's own witness is unable to attend trial."  *Id.  See also United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1982) ("[U]nlike in civil cases, the Federal Rules of Criminal Procedure provide no broad right to take depositions.")

### B.      The Anticipated Testimony of Vadym Fokin and Rule 27

Mr. Fokin is a Ukrainian citizen who is present in the United States only because the ship he worked on arrived at a port in Maine and evidence of a crime onboard the ship was discovered.  He has remained in Maine pursuant, first, to an agreement between the owner and the operator (his employer) and the United States and, later, pursuant to a material witness warrant issued pursuant to 18 U.S.C. § 3144.  He is represented by counsel.  He has been interviewed by counsel for the Petitioners.  The United States has spoken with Mr. Fokin and determined, in good faith, that he possesses neither inculpatory nor exculpatory information.  As specifically contemplated in the Security Agreement, the government has notified the Petitioners–in the language of the surety agreement–that Mr. Fokin's continued presence is "no longer needed".

The government has provided Petitioners a summary of the investigative evidence.  Each alleged violation occurred in, or related to activities in, the *Margit Gorthon's* engine room.  Mr. Fokin is not an engine room employee, he is a deck fitter and a member of the Deck Department.  His daily work included projects on the vessel's deck and in the vessel's cargo area, including maintaining the cargo elevators and fork lifts used to load cargo.  He had never been in, nor was witness to, the engine room and engineering spaces.  He was not in a position to witness that a discharge happened or did not happen and he cannot say that any other crew member attempted to, or did, obstruct the Coast Guard investigation.

The Petitioners allege that they "expect to obtain and preserve relevant and exculpatory testimony from Mr. Fokin. Specifically, it is expected that Mr. Fokin will be able to testify knowledgeably concerning the Petitioners' rules, training programs, required practices and procedures and his first hand, eye-witness account of shipboard practices and crewmember actions."  Docket No. 1 at page 7.  Courts generally agree that to allow Rule 27 to be used for the purpose of discovery before an action is commenced would be "an abuse of the rule."  *See Wright, Miller & Marcus, Federal Practice and Procedure*, § 2071 at 651-652.  Therefore, to the extent Petitioners want to find out what Mr. Fokin actually has to say, a civil Rule 27 deposition is not appropriate.  "The case law makes clear that 'perpetuation' means the perpetuation of known testimony, and that the rule may not be used as a substitute for discovery . . . ."  *Application of Checkosky*, 142 F.R.D. 4, 7 (D.D.C.1992) (emphasis in original).

Even if Rule 27 were available to the Petitioners, it requires them to show what Mr. Fokin *will* say and make a "narrowly-tailored" showing under Rule 27(a)(1).  *Id.*  The Petitioners have not made that showing.  If the Court is inclined to permit the deposition of Mr. Fokin under

11

Rule 27, the government respectfully requests that the Court order that the Petitioners be required to further specify the facts that they will establish and order that the deposition be limited to testimony on those facts.

## CONCLUSION

A criminal investigation is pending that relates to the matter that is the subject of the Petitioner's request for a deposition and discovery.  In these circumstances, Federal Rule of Civil Procedure 27 does not permit the relief that the Petitioners seek.

Dated at Portland, Maine this 16th day of April 2010.

Respectfully submitted,

PAULA D. SILSBY
UNITED STATES ATTORNEY

/s/  F. Todd Lowell
F. TODD LOWELL
Supervisory Assistant United States Attorney

/s/ Todd S. Mikolop
TODD S. MIKOLOP
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Crimes Section

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2010, I filed the Government's Notice to Court Regarding Verified Emergency Petition for an Order Authorizing Deposition To Perpetuate the Testimony of Vadym Fokin Pursuant to Federal Rule of Civil Procedure 27, with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

EDWARD S. MACCOLL
emaccoll@thomport.com

GEORGE T. DILWORTH
tdilworth@dwmlaw.com

I hereby certify that on April 14, 2010, I have mailed by United States Postal Service, the Government's Notice to Court Regarding Verified Emergency Petition for an Order Authorizing Deposition To Perpetuate the Testimony of Vadym Fokin Pursuant to Federal Rule of Civil Procedure 27 to the following non-registered participants:

BRITON P. SPARKMAN
CHALOS & CO, P.C.
123 SOUTH STREET
OYSTER BAY, NY 11771

GEORGE MICHAEL CHALOS
CHALOS & CO, P.C.
123 SOUTH STREET
OYSTER BAY, NY 11771

Paula D. Silsby
United States Attorney

/s/ F. Todd Lowell
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Room 111
Bangor, Maine  04401
(207) 945-0373
todd.lowell@usdoj.gov

13